UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD RALPH SPRINGETT,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

                               /

Case No.  1:15-CV-998

Hon. Ray Kent

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. (ECF No. 8.)

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty years of age as of the date of the ALJ's decision. (PageID.28, 115.) He obtained a high school education and was previously employed as a landscape laborer. (PageID.73, 105.) Plaintiff applied for benefits on October 28, 2012, alleging that he had been disabled since September 13, 2012, due to injuries to his left shoulder and ankle, limited mobility in his left elbow, a seizure disorder, and constant shaking of his hands. (PageID.115–116, 182–187.) Plaintiff's application was denied on June 12, 2013, after which time he requested a hearing before

an Administrative Law Judge (ALJ). (PageID.132–143.) On May 9, 2014, Plaintiff appeared with his counsel before ALJ Michael S. Condon for an administrative hearing at which time Plaintiff, his spouse, and a vocational expert (VE), all testified. (PageID.51–113.) In a written decision dated June 20, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.28–49.) On July 31, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.22–26.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

---

[1] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Condon determined Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 13, 2012, the alleged onset date. (PageID.33.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of: (1) seizure disorder; (2) cognitive disorder; (3) depression with anxiety; (4) left shoulder osteoarthritis status-post total left shoulder replacement surgery; (5) status-post multiple ankle surgeries; and (6) status-post left elbow surgery. (PageID.33.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.34–36.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> less than a full range of light work as defined in 20 CFR 404.1567(b). The claimant: can lift and carry up to 20 pounds occasionally and 10 pounds frequently, but is limited to carrying only up to 5 pounds with the left upper extremity; in an 8-hour workday, the claimant can sit for 1 hour at a time for up to 6 hours total and can stand/ walk for 30 minutes each at a time for up to 6 hours total; must avoid exposure to hazards, including unprotected heights and dangerous moving machinery and is unable to operate motorized vehicles; is limited to only occasional exposure to temperature extremes; can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds; can occasionally balance, stoop and crouch, but can never kneel or crawl; cannot reach above chest level with the left upper

4

>extremity; and is limited to doing only simple, routine, repetitive tasks involving simple work-related decisions.

(PageID.36.) Continuing with the fourth step, the ALJ further determined that Plaintiff was unable to perform his past relevant work. (PageID.43.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform other work as a light assembler (14,000 regional jobs), packager (6,300 regional jobs), and machine tender (7,800 regional jobs). (PageID.106–107.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.44.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from September 13, 2012, the alleged disability onset date, through June 20, 2014, the date of decision. (PageID.44–45.)

## DISCUSSION

### 1.     The ALJ's Step Three Analysis.

Plaintiff first argues the ALJ's step three determination is unsupported by substantial evidence. He specifically contends the ALJ erred by failing to consult a medical expert as to whether his impairments met or equaled a listing, and also erred by failing to more fully discuss whether Plaintiff's severe impairment of a seizure disorder satisfied a listed impairment.[2] (PageID.590–594.) The Court disagrees.

---

[2] The Court notes that, among other things, Rule 10.1 of the Local Civil Rules specifies that briefs "must be double spaced." W.D. MICH. L CIV R 10.1. Plaintiff has filed a non-conforming brief. Plaintiff's counsel is cautioned that future briefs which fail to comply with this district's local rules may be stricken.

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. At step three of the sequential disability analysis, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). "When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

At issue here are two listed impairments addressing both convulsive and nonconvulsive epilepsy. The first, Listing 11.02, contains the following elements:

> 11.02 *Epilepsy–convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated*

6

> *phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:*
>
> > A. Daytime episodes (loss of consciousness and convulsive seizures) or
> >
> > B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02. The second listing at issue, Listing 11.03, provides as follows:

> 11.03 *Epilepsy–nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.03. The ALJ concluded that Plaintiff's impairments did not meet or medically equal any listed impairment, including listings 11.02 and 11.03. (PageID.34–36.)

> A. The ALJ Was Not Required to Consult a Medical Expert on Equivalency.

Plaintiff first contends the ALJ's conclusion that he "did not medically equal" a listing was improper. (PageID.592.) It appears Plaintiff alleges the ALJ should have obtained the opinion of a medical expert on the matter. He depends upon two cases from the Eastern District of Michigan which critique the single decision maker (SDM) model as applied to ALJ decisions.[3] Eastern District decisions, however, are not binding on this Court. *See Mich. Elec. Emps. Pension*

---

[3] The SDM model was designed to streamline administrative review of disability claims. Under this approach, the single decision maker, a non-medical source, assumes primary responsibility for processing the claimant's application for disability, including making the initial disability determination. The process is further streamlined in that a claimant who disagrees with the initial determination is permitted to skip the reconsideration level of the administrative review process and immediately request a hearing before an ALJ. 20 C.F.R. §§ 404.906, *see White v. Comm'r of Soc. Sec.*, No. 12–cv–12833, 2013 WL 4414727, at * 8 (E.D. Mich. Aug. 14, 2013).

*Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp.2d 746, 761–62 (W.D. Mich. 2008). Moreover, this line of authority has been persuasively distinguished by other decisions from this district which recognize that the burden at step three remains squarely on a plaintiff's shoulders. *See, e.g.*, *Garza v. Comm'r of Soc. Sec.*, No. 1:14-CV-1150, 2015 WL 8922011, at *9 (W.D. Mich. Nov. 25, 2015), *report and recommendation adopted*, No. 1:14-CV-1150, 2015 WL 8958469 (W.D. Mich. Dec. 15, 2015). In any event, however, Plaintiff's reliance on this authority is misplaced. Plaintiff's case did not involve the use of the SDM model. Rather it was decided with the benefit of agency reviewers, including Dr. Dinesh Tanna, M.D., who, among other things, considered Plaintiff's seizure disorder against the listings, but nonetheless found him capable of performing a range of light work. (PageID.121–126.) The ALJ assigned significant weight to this opinion. (PageID.41.) "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are highly qualified and are experts in Social Security disability evaluation." *Ferrell v. Comm'r of Soc. Sec.*, No. 1:14–cv–1232, 2016 WL 316724, at *5 (W.D. Mich. Jan. 27, 2016) (citation and quotations omitted). Plaintiff has not argued the ALJ could not rely on this opinion. Accordingly, this claim of error is rejected.

       B.  *The ALJ Provided Sufficient Discussion, Elsewhere in the Opinion, to Permit Meaningful Review of His Step Three Determination.*

Plaintiff secondly claims the ALJ's analysis regarding whether his seizure disorder met a listed impairment was so lacking in substantive analysis that a reviewing Court could not perform proper judicial review. (PageID.592–594.) The gist of the Commissioner's response is that Plaintiff did not carry his burden of demonstrating he met all the elements of any listed impairment. (PageID.607–613.) Plaintiff replies by asserting he has met all the elements of Listings 11.02 and 11.03. (PageID.620–622.)

Pointing in favor of Plaintif's contention is the Sixth Circuit's decision in *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x. 411 (6th Cir. 2011). There, the court remanded the case after finding that the ALJ failed to provide any analysis of Listing 1.00 beyond a single conclusory sentence stating Plaintiff did not meet the listing's requirements. In remanding, the court noted that "the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Id.* at 416. While this weighs in favor of Plaintiff's position, this is not the end of the matter. In a later decision, the Sixth Circuit specified that an ALJ's failure to provide detailed analysis at step three is no basis for relief if the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). This is so because there was "no need to require the ALJ to 'spell out every fact a second time.'" *Id.* (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)).

Here, the ALJ noted that Plaintiff did not meet Listings 11.02 or 11.03 because "[t]here is no credible evidence of the type of seizures described under the listings, with the required significant level of interference with daily activities. In that regard, the claimant is able to perform household chores, drive his son to school activities, prepare simple meals, shop for groceries, and play games. (Exhibit 5E)." (PageID.35.) As an initial matter the ALJ's statement here, while admittedly cursory, contains much more substance than what was contained in the *Reynolds* case. This does not appear to be a case where the ALJ "skipped an entire step of the necessary analysis." *Reynolds*, 424 F. App'x at 416. But in any event, the ALJ went on to discuss the medical record in detail and articulated ample support for his determination that Plaintiff did not satisfy Listing 11.02 or 11.03. (PageID.39–40.) Regarding Plaintiff's seizures, the ALJ stated:

9

> [T]he record reveals that the claimant's seizure activity was controlled with medication for an extended period (see, e.g., Exhibits 1F, 2F, 3F, 5F). Further, multiple CT scans of the claimant's head reveal no changes over the past 13 years (Exhibit 4F/56-58, 10F/3). Regardless, in early 2013, the claimant began treatment with Dr. [Shan] Abbas. Contrary to the claimant's report that it had been 10 months since his last seizure, Dr. Abbas noted that the claimant experienced ongoing seizure activity despite medication management. As such, adjustments were made to the claimant's medication regimen (Exhibit 10F/1-8).
>
> During the course of the claimant's June 2013 consultative examination, the claimant denied experiencing any recent grand mal seizures, but indicated he had recently developed absent seizures associated with hand tremors and staring (Exhibit 11F/1).
>
> Neurological records dated November 2013 indicate that while the claimant experienced one episode where he lost his balance as well as several episodes of reduced attentiveness and concentration, he had experienced no seizures since September 2013 (Exhibit 15F/6-9). During his most recent appointment in March 2014, the claimant reported he had experienced two seizures since his November 2013 visit and some recurrent falls. However, no neurological deficits were appreciated (Exhibit 15/1-5).
>
> While the record clearly establishes a seizure disorder, the record does not establish the degree of frequency or disability as alleged by the claimant or his wife. As previously indicated, the claimant's seizures have been pretty well controlled with medication over the years (Exhibits 1F, 2F, 3F, 5F). Further, even the claimant's wife admitted as such in the associated seizures questionnaires (Exhibits 6E, 7E). While treatment records indicate that the claimant has experienced a few breakthrough seizures over the past couple of years (Exhibit 10F, 15F), the claimant's current medication regimen appears to result in good efficacy. Further, when specifically questioned about grand mal seizures, the claimant admitted that they were well controlled and the record reveals only minimal medications side-effects, primarily in the form of drowsiness and fatigue.

(PageID.39) (internal footnotes omitted). In a footnote, the ALJ also noted that:

> During the hearing, as well as via argument post-hearing (Exhibit 14E), the claimant's representative attempted to dismiss the level of frequency and control reported by the claimant's wife in connection

> with the Third Party Seizure Questionnaire (Exhibit 7E). In that regard, it is alleged that the claimant's altered 'staring episodes', which the claimant's wife had previously dismissed, actually constitute seizure activity (Exhibit 17F/1). Nevertheless, a review of Dr. Abbas's records, when discussing seizure activity, do not indicate that these are classified as break-through seizures (Exhibit 15F/2-5).

(PageID.39.) As noted in the above paragraph, the ALJ relied on a medical source statement from Dr. Abbas, who opined in relevant part that while Plaintiff did have staring episodes, he only had convulsive (grand mal or psychomotor) seizures, and did not have nonconvulsive (petit mal, psychomotor or focal) seizures. (PageID.579.) In all this, the ALJ gave a thorough and accurate accounting of the record regarding Plaintiff's seizures. As is evident by the ALJ's discussion, Plaintiff's seizures did not meet the frequency requirement of either listing. Notably, regarding Listing 11.03, the ALJ resolved the conflicting statements of Plaintiff's spouse by referencing Dr. Abbas's statement that did not classify Plaintiff's "staring episodes" as break-through seizures. (PageID.39.) Similarly, regarding Listing 11.02, Plaintiff clearly continues to have convulsive seizures, but not at the frequency required by the listing. (PageID.565, 569.) Accordingly, the Court finds the ALJ's discussion elsewhere in the record allows for meaningful review of the ALJ's step three determination, and further concludes this determination is supported by substantial evidence. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). Plaintiff's claim of error is denied.

### 2. The ALJ's Evaluation of the Opinion Evidence.

Plaintiff next claims the ALJ erred in evaluating two statements from Dr. Shan Abbas. The first, dated July 24, 2013, consists merely of a short sentence reporting Plaintiff was "unable to return to work indefinitely due to epilepsy." (PageID.535.) The second, dated May 13, 2014, was a more lengthy evaluation of Plaintiff's seizures contained in a medical source statement.

On the completed statement, Dr. Abbas stated he had first examined Plaintiff on March 15, 2013. He went on to report Plaintiff suffered from convulsive, but not nonconvulsive, seizures, though he did state Plaintiff had "staring" episodes. (PageID.579.) There was a loss of consciousness during the seizures, and there was no warning of impending seizures. Dr. Abbas declined to offer an opinion as to the average frequency of Plaintiff's seizures, but he described them as including altered awareness and a "tonic - clonic" activity. Plaintiff could be unresponsive and at times combative. (PageID.579.) After a seizure, Plaintiff would have confusion, paranoia, severe headaches, muscle strain, irritability, exhaustion, difficulty communicating, and combativeness. This postictal state would last for several hours, and as a consequence, Plaintiff would need to rest for several hours after suffering a seizure. (PageID.580.) In terms of functional limitations, Dr. Abbas opined that Plaintiff was capable of only low stress work. (PageID.580.) He could stand or walk for about four hours, and sit for at least six hours. (PageID.581.) He could frequently lift and carry twenty pound weights, and occasionally lift and carry fifty pound weights. (PageID.581.) Plaintiff would not need to take any unscheduled breaks, but he could be expected to have good days and bad days, and Dr. Abbas concluded that were he to work, Plaintiff could be expected to be absent from work more than four days per month. (PageID.582.)

The ALJ assigned "no weight" to the July 24, 2013, opinion. (PageID.40.) Regarding the May 13, 2014, opinion, the ALJ assigned it partial weight. (*Page*ID.40–41.) Great weight was given to the opinion that Plaintiff could perform low stress work, sit for 6 hours and stand for four hours, and frequently lift up to twenty pounds. (PageID.41.) The ALJ, however, assigned only little weight to Dr. Abbas' statement that Plaintiff would be absent from work more than four days a month. (PageID.41.) The ALJ agreed that Plaintiff would have good and bad days, but found the

record did not support a conclusion that Plaintiff would be absent with such a frequency. (PageID.41.) Plaintiff argues the ALJ should have given both the July 24, 2013, opinion as well as the entirety of the May 13, 2014, opinion controlling weight.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and

the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Plaintiff first asserts Dr. Abbas's July 24, 2013 opinion was "ignored" and should have been given controlling weight. (PageID.596.) The Court disagrees. First of all, the opinion was not "ignored" by the ALJ. To the contrary, it was explicitly discussed. The ALJ discounted it by noting Plaintiff's treatment relationship with Dr. Abbas had just begun and that the extreme limitations were not supported by the doctor's clinical findings. (PageID.40.) Moreover, a statement that a claimant is "disabled" or "unable to work" is not entitled to "any special significance" as it is an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. 404.1527(d); *see also Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274 (6th Cir. 2010). However, "the ALJ still must 'explain the consideration given to the treating source's opinion(s)" *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (quoting SSR 96–5p). Even assuming Dr. Abbas qualified as a treating source when this opinion was given, the ALJ gave sufficient consideration here.[4] The ALJ correctly observed that nothing in the record supported Dr. Abbas's conclusion Plaintiff was unable to work. In addition to noting Plaintiff's seizures did not occur with the frequency required by the listings, the ALJ noted that mental status exams consistently found Plaintiff was awake, alert, and oriented to person, place

---

[4] The record indicates at the time Dr. Abbas issued this statement, he had only examined Plaintiff, at most, twice.

and time. He had both an intact recent and intact remote memory. While he had reduced attention and concentration, he was able to answer questions appropriately and had a good fund of knowledge. (PageID.567, 571.) The ALJ reasonably found these records to be inconsistent with the severity of the opinion. Accordingly substantial evidence supports the ALJ's decision here.

Next, Plaintiff alleges the ALJ erred in failing to adopt Dr. Abbas's May 13, 2014, conclusion that Plaintiff would be absent from work more than four days per month. (PageID.594–596.) According to Plaintiff, the only way the ALJ could have arrived at this conclusion, was to impermissibly "play doctor," (PageID.595–596.) The ALJ provided the following discussion of this portion of the opinion:

> [T]he record reveals little support for his assessment that the claimant[] is likely to [be] absent from work more than four days a month[] on account of his impairments (Exhibit 17F/4). As indicated above, Dr. Abbas's own treatment records document only a handful of grand mal seizures since commencing such treatment, during which time the claimant's medications have been adjusted. Further, the Medical Source Statement itself indicates that the claimant does not experience nonconvulsive seizures (Exhibit 17F/1). Further, even considering he claimant's alleged staring spells, a review of Dr. Abbas's records does not reveal that these result in work-preclusive limitations or that the spells, which according to the claimant last, at the most, ten minutes, would require the claimant to be absent more than four days per month. As such, this particular aspect of Dr. Abbas's opinion is afforded little weight.

(PageID.41.) Plaintiff correctly notes that an ALJ may not substitute his medical judgment for that of the claimant's physicians. *See Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) ("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("The Commissioner's determination must be based on testimony and medical evidence in the record. And, as this Court has counseled on many occasions, ALJs must not

15

succumb to the temptation to play doctor and make their own independent medical findings"). But the ALJ did not play doctor here by concluding that this portion of the doctor's opinion was not well supported.

Indeed there is no record evidence that Plaintiff's seizures were occurring at a frequency that would cause him to be absent from work more than four times a month. Rather, it appears Plaintiff's seizures were well controlled. For example, on March 15, 2013, Dr. Abbas indicated that Plaintiff had not had any convulsive seizures in the past ten months. While he complained of four to seven focal seizures (those events also referenced as "staring spells"), Dr. Abbas stated the event, including the postictal state, would last only a few minutes. (PageID.515.) Later, on November 27, 2013, Dr. Abbas indicated Plaintiff had no seizures of either type since the prior visit on September 6, 2013. (PageID.569.) Accordingly, the ALJ gave good reasons, supported by substantial evidence, for assigning little weight to this portion of the opinion.

Finally, Plaintiff appears to challenge the ALJ's step five conclusion, noting the VE had testified that an allowance for unpredictable breaks would preclude Plaintiff from being able to perform both his past work and all other work. (PageID.108.) Plaintiff contends that the ALJ should have included this limitation in the hypothetical he ultimately adopted. (PageID.596.) An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However,

a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir.1990). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir.1994).

Here, the ALJ posed a hypothetical question to the VE which mirrored the RFC (PageID.105–107.) Based on that hypothetical question, the VE testified that Plaintiff could perform 28,100 jobs in the region. (PageID.105–107.) After the ALJ posed his hypothetical question, the ALJ posed other alternative hypothetical questions, one of which included a limitation allowing for unpredictable breaks. (PageID.108.) With respect to this limitation, the VE responded that it would preclude all past and other work. (PageID.108.) Although the VE testified that the restrictions set forth in the alternative hypothetical were work preclusive, the ALJ did not include these limitations in the RFC. (PageID.36.) This is so because the ALJ indicated the record did not support limitations beyond those accounted for in the RFC. Specifically, the ALJ found the record did not support both Plaintiff's and his spouse's reports of the frequency of his seizures. (PageID.42.) The ALJ was not required to include these unsubstantiated limitations in the hypothetical question posed to the VE. *See Stanley*, 39 F.3d at 118; *Blacha*, 927 F.2d at 231.

Accordingly, for all the above reasons, this claim of error is denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

A separate judgment shall issue.


Dated: March 20, 2017         /s/ Ray Kent
                              RAY KENT
                              United States Magistrate Judge